# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MINC LLC<br>200 Park Avenue<br>Suite 200<br>Orange Village, Ohio 44122<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW STEBBINS<br>3300 Chadbourne Road<br>Shaker Heights, Ohio 44120<br><br>and<br><br>BUCKINGHAM, DOOLITTLE &<br>BURROUGHS, LLC<br>1375 E. 9th Street<br>Suite 1700<br>Cleveland, Ohio 44114<br><br>    Defendants. | Case No. 1:22-cv-1655<br><br>Judge<br><br><br>**COMPLAINT**<br><br><br><br>**Jury Demand Endorsed Herein** |

NOW COMES Plaintiff, Minc LLC ("Minc" or "Plaintiff"), by and through counsel, and for its Verified Complaint against Defendants, Andrew Stebbins ("Defendant Stebbins" or "Stebbins") and Buckingham, Doolittle & Burroughs, LLC ("Defendant BDB" or "BDB") (collectively, "Defendants"), hereby states as follows:

## THE PARTIES

1. Minc, at all times pertinent hereto, was and is an Ohio Limited Liability Company, with its principal place of business located in Cuyahoga County at 200 Park Avenue, Suite 200, Orange Village, Ohio 44122.

2. Defendant Stebbins, a former Minc employee, is an individual who, upon information and belief, resides at 3300 Chadbourne Road, Shaker Heights, Ohio 44120.

3. Defendant BDB is an Ohio Limited Liability Company with its principal place of business in Akron, Ohio. BDB has an office in Cleveland, Ohio which is where Defendant Stebbins works for Defendant BDB.

## JURISDICTION AND VENUE

4. Minc brings this action pursuant to the Defend Trade Secrets Act ("DTSA") at 18 U.S.C. § 1836 *et seq*. This Court possesses subject matter jurisdiction over Minc's trade secrets claim as it arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.

5. This Court possesses supplemental jurisdiction over Minc's remaining claims pursuant to 28 U.S.C. § 1367.

6. This Court possesses personal jurisdiction over Defendant Stebbins as he resides in a county located in this District and Division, performed services for Minc in this District and Division, and currently performs services for Defendant BDB in this District and Division. Additionally, Defendant Stebbins acquired, misappropriated, and used Plaintiff's confidential, proprietary, and/or trade secret information when working in this District and Division.

7. This Court possesses personal jurisdiction over Defendant BDB as it currently employs Defendant Stebbins at its Cleveland office, located at 1375 East 9th Street, Suite 1700, Cleveland, Ohio 44114.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b), (c), and (d) as Defendant Stebbins resides in, performed services for Minc, provides competitive services for Defendant BDB, misappropriated and used confidential information in this District and Division.

9. Venue is further proper pursuant to 28 U.S.C. § 1391(b) as Minc and all Defendants have continuous and systematic contacts with this District and Division and a substantial part of

the events or omissions giving rise to the claims occurred in this District and Division including but not limited to the misappropriation and use of Minc's information in this District and Division.

## FACTUAL ALLEGATIONS

10. Minc is an industry-leading law firm with a niche practice assisting clients across the nation with issues involving online defamation, harassment, extortion, sextortion, reputation repair, and digital privacy.

11. Defendant BDB is a law firm, focusing its practice on business litigation, employment & labor, real estate & construction, health & medicine, and trusts & estates.

12. Defendant BDB does not specialize in cases involving online defamation, harassment, extortion, sextortion, reputation repair, and digital privacy.

13. Upon information and belief, Defendant BDB never practiced in the area of online defamation prior to its hire of Defendant Stebbins.

### Defendant Andrew Stebbins

14. On or about March 2019, Minc offered Stebbins a position as an Associate Attorney.

15. Minc promoted Stebbins to its leadership team around early spring of 2021, where he was intimately involved in developing Minc's niche and nationwide practice areas and business operations. In doing so, Stebbins learned about Minc's Ohio and national marketing, competitive strategies, development of templates, operational policies and processes, use of third-party vendors, and all other strategies employed by Minc that provide it with a competitive advantage over other law firms and businesses that provide services related to online reputation management and online content removal.

16. Minc's confidential and proprietary information disclosed to and used by Stebbins included optimized content creation (articles and video) to engage potential clients, sales strategies to ensure client qualification to avoid wasting time on non-qualified clients, SWOT analyses relative to the services offered by competitors and feedback surveys.

17. On or about June 3, 2019, as a condition of his continued employment, Stebbins executed a Confidentiality and Non-Solicitation Agreement with Minc (the "Agreement") in which Stebbins agreed to certain restrictive covenants and post-employment obligations, including, but not limited to, non-disclosure of Minc's confidential and trade secret information, return of the same upon separation, and non-solicitation of Minc's employees. A true and accurate copy of the Agreement is attached as Exhibit A.

18. As a part of Minc's leadership team, Stebbins had extensive access to Minc's highly valuable, confidential, proprietary and trade secret information, including, but not limited to, Minc's nationwide processes, procedures, templates, marketing and sales strategies, customer lists, vendor lists, training resources, presentations, and pricing information that Minc uses to protect client's interests in Ohio and out-of-state in its online defamation practice. This information is confidential and proprietary, is not publicly known, has been generated and cultivated over many years, and gives Minc a substantial competitive advantage.

19. Minc has engaged in reasonable efforts to preserve the secrecy of its confidential and proprietary information, including, among other actions, requiring passwords to access computer systems and databases, restricting access to its offices and its secured shared files, monitoring systems, requiring employees who are provided access to the confidential and proprietary information, to sign written agreements that contain non-disclosure, return of

information, and non-solicitation obligations, and requiring employees to sign handbooks which contain warning about the use and dissemination of confidential information.

## **The Agreement**

20. The Agreement provides the following regarding continued employment as valid consideration:

> Employment as Valid Consideration.
>
> Employee agrees and understands that execution of this Agreement is a condition precedent to Minc's agreeing to employ, employment of and/or continued employment of, Employee and that such agreement to employ, employment of, and/or continued employment of, Employee is sufficient and adequate consideration for the promises contained in this Agreement.

(Ex. A, p. 2).

21. The Agreement provides the following regarding confidential and proprietary information:

> Confidentiality.
>
> At all times following Minc's agreement to employ Employee, during Employee's employment with Minc, and at any time after the termination of Employee's employment with Minc for any reason, Employee will not disseminate, publish, disclose, use for Employee's own benefit or the benefit of others, or divulge or convey to others, any Trade Secrets of Minc or that of third parties obtained by Employee following Minc's agreement to employ Employee and/or in the course of Employee's employment with Minc. "Trade Secret" means any and all information, knowledge or data in any form whatsoever, tangible or intangible, that is considered a trade secret under applicable law including, but not limited to, information contained within Minc's internal intranet and/or database (including, but not limited to, training resources, presentations, contacts, web content removal companies, pricing information, business transactions), Minc's actual or potential vendor lists (including contact name, addresses, telephone numbers, and specific characteristics), pricing information (such as price lists, quotation guides, previous or outstanding quotations, or billing information), inventions, patents, client data and/or research and development data. This promise of confidentiality is in addition to, and does not limit, any common law or statutory rights of Minc to prevent publication, dissemination, use or disclosure of its Trade Secrets.

>Employee further agrees that at all times following Minc's agreement to employ Employee, during Employee's employment with Minc, and after the termination of Employee's employment with Minc for any reason, except on behalf of Minc, Employee will not disseminate, publish, disclose, use for Employee's own benefit or the benefit of others, or divulge or convey to others, any Confidential Information of Minc in any form, tangible or intangible. "Confidential Information" means any and all proprietary business information that is treated as confidential or secret by Minc, but that may not constitute a Trade Secret. This promise of confidentiality is in addition to, and does not limit, any common law or statutory rights of Minc to prevent publication, dissemination, use or disclosure of its Confidential Information.
>
>Confidential Information does not include information that is generally available to the public other than as a result of a breach of a contractual or other duty of confidentiality.
>
>Upon termination of Employee's employment with Minc or at any other time at Minc's request, Employee agrees to deliver promptly to Minc all Minc property, including, but not limited to, vendor lists or names, addresses, telephone numbers and services, vendor background information, vendor pricing, quotation guides and billing information, client files, all drawings, plans, manuals, letters, notes, notebooks, reports, sketches, formulae, source codes, computer programs and similar items, memoranda, and all other materials and all copies thereof relating in any way to Minc's business and in any way obtained by Employee during the period of Employee's employment with Minc which are in Employee's possession, custody or control. Employee further agrees not to make or retain any copies of any of the foregoing and will so represent to Minc upon termination of Employee's employment.

(*Id*. at 2-3).

22. The Agreement further provides the following regarding non-solicitation:

>Non-Solicitation of Employees.
>
>Employee agrees that during Employee's employment with Minc and for a period of twelve (12) months after termination of Employee's employment with Minc for any reason, Employee will not recruit, hire or attempt to recruit or hire, directly or by assisting others, any other employee of Minc with whom Employee had material contact during Employee's employment with Minc.

(*Id*. at 3).

23. The Agreement provides the following regarding remedies:

<u>Equitable Relief.</u>

Employee acknowledges and agrees that any breach of the provisions of this Agreement would cause Minc irreparable injury which would not reasonably or adequately be compensated by damages in an action at law. Therefore, Employee agrees that Minc shall be entitled, in addition to any other remedies it may have under this Agreement, at law, or otherwise, to immediate injunctive and other equitable relief to prevent or curtail any breach of this Agreement by Employee. Nothing in this Agreement shall prohibit Minc from seeking or recovering any legal or monetary damages to which it may be entitled if Employee breaches this Agreement.

(*Id*. at 3-4).

24. The Agreement also provides the following regarding the governing law:

<u>Governing Law</u>.

This Agreement shall be deemed to be made and executed in Ohio and shall be governed, construed and interpreted under, and in accordance with, the laws of the State of Ohio, without regard to conflict of law provisions. The Company and Employee agree that all actions or proceedings that arise out of, are associated with, require the interpretation of, and/or that are in any way directly or indirectly related to the subject matter covered in this Agreement or to any matter related to Employee's employment with the Company, shall be tried and litigated exclusively in the State or Federal Court located in Cuyahoga County of the State of Ohio, except as is necessary to thereafter enforce any order or judgment rendered by such Ohio State or Federal Court, in which case such enforcement proceeding may be litigated in another jurisdiction.

(*Id*. at 5).

25. The Agreement further provides for an award of attorneys' fees in the event of a successful suit to enforce it:

Employee acknowledges and agrees that should it become necessary for the Company to file suit to enforce the covenants contained herein, and any court awards the Company any damages and/or any full or partial injunction due to the acts of Employee, then the Company shall be entitled to recover its reasonable costs incurred in conducting the suit including, but not limited to, reasonable attorneys' fees and expenses.

(*Id*.)

**Defendant Stebbins' Resignation, Employment with BDB
and Violations of the Agreement**

26. In or around March of 2022, BDB began recruiting Stebbins.

27. On or about May 18, 2022, Stebbins gave notice of his voluntary resignation from Minc.

28. Stebbins' last day with Minc was on or about May 31, 2022

29. Stebbins' started working for BDB in June of 2022

30. On June 3, 2022, BDB announced the addition of Stebbins as a Partner in its Cleveland office (the "Announcement"). (Announcement attached as Exhibit B). In BDB's Announcement, Stebbins was quoted as saying:

> In my area of practice, it takes only a few minutes to write a fake anonymous review, defame a business or destroy a person's reputation. When a client is a victim, I respond quickly to protect their reputation by having damaging content immediately removed and identifying the source to recover damages and eliminate future conduct.

(*Id*.).

31. Also in the Announcement, BDB's Managing Partner, Steve Dimengo stated: "We are very happy to have Andrew join our team and bring a greater emphasis on the defamation specialty of our practice." (*Id*.).

32. Prior to this Announcement and Stebbins' employment, BDB did not advertise or identify cases involving online defamation, harassment, extortion, sextortion, reputation repair, and digital privacy as one of its practice areas.

33. Prior to the filing of this lawsuit, Minc undertook an internal investigation to evaluate if Stebbins engaged in surreptitious activities prior to his departure. Minc discovered that prior to Stebbins' departure, he backed up and synced his entire Minc Law computer desktop files, and folders to his personal cloud storage network (i.e., OneDrive).

34. Stebbins also googled "how to backup outlook" and how to wipe a computer hours before he left Minc.

35. He also transferred Minc confidential and proprietary information to a thumb drive named "MNC FILES."

36. Stebbins also sent himself a productivity system that Minc purchased for him.

37. Stebbins also downloaded several files from the firm's "knowledge base" and accessed Minc's client lists.

38. On May 20, 2022, Stebbins investigated Minc's ghost writing services to market his new practice at BDB and accessed a folder on his personal gmail account titled "Marketing."

39. Stebbins attempted to conceal his activities by "wiping" his computer prior to leaving Minc.

40. Stebbins also "bulked up" from an average number of 20-30 to 50 client files (effectively "wharehousing") so he could attempt to take a large number of clients to BDB.

41. Stebbins conducted all of these activities <u>after</u> he signed documents concerning "business plans" and a Non-Disclosure Agreement concerning new employment with BDB beginning in March 2002.

42. On or around July 5, 2022, Stebbins contacted a vendor only known to Minc in an effort to copy Minc's marketing strategies.

43. Minc also learned that, following his departure, Stebbins solicited Minc employee, Christina Williams, to leave Minc and join BNB.

44. Stebbins' active solicitation of Minc's employees, vendors, and clients is a violation of the Agreement.  Additionally, Stebbins' conduct in forwarding Minc's confidential, proprietary, and trade secret information to his email account and then using that information in connection

9

with his new employment with BNB in an effort to build a competing practice, is a violation of the Agreement.

45. As a result of the foregoing, on or about July 6, 2022, Minc sent correspondence to Stebbins reminding him of his obligations to Minc and asking that he cease and desist from further violating them by using Minc information, also providing a copy of the same to his new employer, BDB. (Exhibit C, Cease and Desist Letter).

46. Since receipt of Minc's Cease and Desist Letter, BDB and Stebbins have confirmed that Stebbins uploaded the Minc information that he took to BDB's systems, accounts and/or devices.

47. Despite numerous requests for return of that information, BDB and Stebbins have delayed in responding and returning Minc's information. BDB refuses to identify, search, and preserve all sources where Minc information exists, including but not limited to Stebbins' BDB-issued computer or laptop, Stebbins' BDB-issued email account, and shared system areas in which Stebbins had access.

48. While Minc received notice that Stebbins engaged counsel, no assurances were provided that Stebbins would stop violating his obligations to Minc, resulting in this lawsuit.

49. Upon information and belief, Stebbins has taken, retained, and used Minc's confidential and proprietary information without authorization or permission to unlawfully benefit himself and his new employer, BDB, in direct violation of his ongoing post-employment obligations to Minc.

50. Upon information and belief, BDB has taken, retained, and used Minc's confidential and proprietary information without authorization or permission to unlawfully benefit itself such that it has engaged in unfair competition.

51. Upon information and belief, despite Minc's efforts to obtain Defendants' voluntary compliance with Stebbins' ongoing post-employment obligations to Minc, Defendants continue to violate the same and Defendant BDB has tortiously interfered with Minc's contractual and business relationships by (1) soliciting Minc's employees in violation of the non-solicitation provision in the Agreement, (2) attempting to retain and use Minc's vendor information to build a competing practice at BDB, and (3) retaining Minc's confidential and proprietary information and using the same in connection with his role at BDB in violation of the return of information and confidentiality obligations in the Agreement.

## COUNT ONE: MISAPPROPRIATION AND USE OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (DTSA) (Against All Defendants)

52. Minc incorporates herein by reference all allegations set forth in Paragraphs 1 through 51 as if fully rewritten herein.

53. By virtue of his employment with Minc, Stebbins was exposed to and had access to confidential and proprietary information, including trade secrets, developed and maintained by Minc for Minc's benefit.

54. The confidential and proprietary information to which Stebbins was exposed and had access while employed at Minc, as described in this Verified Complaint, was not publicly known, has been generated and cultivated by Minc over many years, gives Minc a substantial competitive advantage over its competitors and constitutes trade secrets within the meaning of 18 U.S.C. §1839(3).

55. This confidential and proprietary information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

56. Minc took reasonable steps to protect its confidential, proprietary, and/or trade secret information, as described in this Verified Complaint.

57. Minc developed its trade secrets through great cost, effort, and knowledge in order to provide it a competitive advantage.

58. Upon information and belief, since leaving Minc and continuing to the present, Stebbins and BDB, without justification or privilege to do so, have willfully and maliciously taken, retained, and misappropriated Minc's confidential, proprietary, and trade secret information, including, but not limited to, Minc's processes, procedures, templates, marketing and sales strategies, customer lists, vendor lists, training resources, presentations, and pricing information that relate to Minc's interstate, online defamation practice to further his individual business interests and the interests of Stebbins and BDB to unfairly compete with Minc.

59. As a direct and proximate result of this misappropriation of its trade secrets, Minc has lost and/or stands to lose its competitive position, goodwill, sales, and its investment in time and energy in generating its confidential information.

60. As a direct and proximate result of Defendants' actions, Minc has been damaged in a monetary amount, to be proven at trial, including punitive damages as a result of Stebbins' willful and malicious conduct, and, further, is entitled to its attorneys' fees and costs associated with this action.

### COUNT TWO: MISAPPROPRIATION AND USE OF TRADE SECRETS UNDER OHIO LAW (OUTSA)
**(Against All Defendants)**

61. Minc incorporates herein by reference all allegations set forth in Paragraphs 1 through 60 as if fully rewritten herein.

62. The confidential and proprietary information to which Stebbins was exposed and had access while employed at Minc, as described in this Verified Complaint, was not publicly known, has been generated and cultivated by Minc over many years, gives Minc a substantial competitive advantage over its competitors and constitutes trade secrets within the meaning of Section 1333.61(D) of the Ohio Revised Code.

63. This confidential and proprietary information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

64. Minc took reasonable steps to protect its confidential, proprietary, and trade secret information, as described in this Verified Complaint.

65. Upon information and belief, since leaving Minc and continuing to the present, Stebbins and BDB, without justification or privilege to do so, have willfully and maliciously taken, retained, and misappropriated Minc's confidential, proprietary, and trade secret information, including, but not limited to, Minc's processes, procedures, templates, marketing and sales strategies, customer lists, vendor lists, training resources, presentations, and pricing information to further his individual business interests and the interests of Stebbins and BDB to unfairly compete with Minc.

66. As a direct and proximate result of Defendants' actions, Minc has been damaged in a monetary amount, to be proven at trial, including punitive damages as a result of Stebbins' willful and malicious conduct, and, further, is entitled to its attorneys' fees and costs associated with this action.

## COUNT THREE: BREACH OF CONTRACT
### (Against Defendant Stebbins)

67. Minc incorporates herein by reference all allegations set forth in Paragraphs 1 through 66 as if fully rewritten herein.

68. On June 3, 2019, Stebbins entered into the Agreement with Minc. (Ex. A).

69. As consideration for the Agreement, Minc provided Stebbins continued employment and access to its highly confidential, proprietary, and trade secret information.

70. In the Agreement, among other things, Stebbins agreed to maintain the secrecy of the Company's proprietary information, to return any such proprietary information upon his separation from employment, and not to solicit employees for a period of twelve (12) months following his separation from employment.

71. Stebbins willfully and maliciously breached the Agreement by, among other actions, forwarding Minc's proprietary information to his personal email account, not returning the same upon his separation from employment, using information developed while he was employed at Minc for work he is performing at BDB, and, soliciting employees with whom he worked while employed at Minc in connection with his new employment at BDB.

72. Minc has performed all of its obligations under the Agreement and all conditions precedent to the enforcement of the Agreement have been satisfied, waived, or abandoned.

73. As a direct and proximate result of Defendants' actions, Minc has also been damaged in a monetary amount, to be proven at trial, including punitive damages as a result of Stebbins' willful and malicious conduct, and, further, is entitled to its attorneys' fees and costs associated with this action.

## COUNT FOUR: TORTIOUS INTERFERENCE
## WITH CONTRACT AND BUSINESS RELATIONSHIPS
**(Against BDB)**

74. Minc incorporates herein by reference all allegations set forth in Paragraphs 1 through 73 as if fully rewritten herein.

75. Defendant Stebbins is aware of Minc's business relationship with its vendors, and employees, and without authorization to do so, Stebbins, as an employee of BDB, has contacted Minc's vendors and employees for the purpose of interfering with Minc's business relationship with them.

76. BDB knew or should have known about Stebbins' employment with Minc and post-employment restrictions in the Agreement, and without justification or privilege, has interfered with Stebbins' contractual and business relationship by employing Stebbins allowing him to use Minc's confidential, proprietary, and trade secret information, and, further, allowing him to solicit vendors and employees with whom he worked while employed at Minc, thus unfairly and unlawfully competing against Minc.

77. Through their actions, BDB has willfully, maliciously, and intentionally interfered with Minc's business and contractual relationships.

78. As a direct and proximate result of Defendants' actions, Minc has been damaged in a monetary amount, to be proven at trial, including punitive damages as a result of Stebbins' willful and malicious conduct, and, further, is entitled to its attorneys' fees and costs associated with this action.

## COUNT FIVE: CONVERSION
**(Against All Defendants)**

79. Minc incorporates herein by reference all allegations set forth in Paragraphs 1 through 78 as if fully rewritten herein.

80. Minc has, at all relevant times, been the owner of its confidential, proprietary, and trade secret information.

81. Prior to resigning from his employment with Minc, Stebbins forwarded Minc's confidential, proprietary, and trade secret information from his Minc email account to his personal Gmail account.

82. In an attempt to cover his tracks, Minc then deleted the emails from his Minc account.

83. Without knowledge or authorization from Minc, Defendant Stebbins unlawfully took and converted Minc's confidential, proprietary, and trade secret information, knowing that it belonged to Minc, to further his own and BDB's interests and business opportunities to the detriment of Minc.

84. After resigning from his employment with Minc, Stebbins did not return Minc's confidential, proprietary, and trade secret information in his possession despite Minc's request that he do so.  To date, it remains in his possession and he is believed to be using it in connection with his employment with BDB.

85. Upon information and belief, BDB is in possession of Minc's confidential, proprietary, and trade secret information after collecting the information Stebbins brought from Minc.

86. Upon information and belief, even after becoming aware of its existence, BDB has not deleted this information from its systems.

87. As a direct and proximate result of Defendants' actions, Minc has been damaged in a monetary amount, to be proven at trial, including punitive damages as a result of Defendants'

16

willful and malicious conduct, and, further, is entitled to its attorneys' fees and costs associated with this action.

### COUNT SIX:  UNJUST ENRICHMENT
### (Against All Defendants)

88. Minc incorporates herein by reference all allegations set forth in Paragraphs 1 through 87 as if fully rewritten herein.

89. By BDB employing Stebbins and allowing him to solicit employees and vendors with whom he worked while employed by Minc, and by Stebbins using Minc's confidential, proprietary, and trade secret information to compete with Minc in its niche practice area of internet defamation and to take away business from Minc, Defendants have been unjustly enriched.

90. Minc has suffered and will continue to suffer damage as a result of these actions.

91. Minc is entitled to any profits obtained by Defendant as a result of Stebbins' employment and use of Minc's confidential, proprietary, and trade secret information, as well as punitive damages, attorneys' fees and costs.

### COUNT SEVEN: BREACH OF FIDUCIARY DUTY, GOOD FAITH AND LOYALTY

92. Minc incorporates herein by reference all allegations set forth in Paragraphs 1 through 91 as if fully rewritten herein.

93. Defendant Stebbins was in a high-level position of confidence and trust at Minc, such that a fiduciary relationship existed between Defendant Stebbins and Minc.

94. As a member of Minc's leadership team, Defendant Stebbins had access to Minc's confidential, proprietary and trade secret information.

95. By reason of this relationship, Defendant Stebbins had a duty to exercise the highest degree of skill, care, good faith, and loyalty in protecting the interests of Minc.

96. Defendant Stebbins willfully, maliciously and consciously disregarded Minc's rights, breached his fiduciary duties, including the duties of loyalty and good faith to Minc by working against Minc's interests, by taking and disclosing Minc's confidential and proprietary information, by soliciting Minc's employees to leave and work for BDB, and by using Minc's confidential and proprietary information to directly compete with Minc for his personal gain and for the benefit of BDB.

97. As a direct and proximate result of Defendants' actions, Minc has been damaged in a monetary amount, to be proven at trial, including punitive damages as a result of Defendants' willful and malicious conduct, and, further, is entitled to its attorneys' fees and costs associated with this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Minc respectfully requests that this Court enter judgment in its favor and against Defendants on the Complaint as follows:

1. That this Court require Stebbins and any other person or entity acting in aid or concert, or in participation with him, including BDB, to return immediately all of Minc's property, keeping no copy;

2. That this Court permanently enjoin Stebbins, BDB and any other person or entity acting in aid or concert, or in participation with them, from retaining, using, or disclosing Minc's confidential, proprietary and trade secret information in any form;

3. That this Court order a civil seizure from Defendants of Minc's property;

4. That this Court require Defendants to provide an accounting of all profits, compensation, commissions, remuneration, and other benefits Defendants have obtained as a result of Stebbins' employment with BDB;

5. That Minc be awarded compensatory and punitive damages in an amount to be proven at trial, including but not limited to, including any pre- and post-judgment interest;

6. That Minc be awarded exemplary damages in an amount not ascertainable at this time.

7. That Minc be awarded its reasonable attorneys' fees and costs; and

8. Such other relief in Minc's favor that the Court deems just and proper under the circumstances of this case and under state and federal law.

**ZASHIN & RICH CO., L.P.A.**

*s/ Stephen S. Zashin*
Stephen S. Zashin (0064557)
ssz@zrlaw.com
Ami J. Patel (0078201)
ajp@zrlaw.com
Brittany A. Mallow (0100928)
bam@zrlaw.com
Zashin & Rich Co. LPA
950 Main Avenue, 4th Floor
Cleveland, OH 44113
T: (216) 696-4441
F: (216) 696-1618

*Attorneys for Plaintiff Minc LLC*

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

*s/ Stephen S. Zashin*
Stephen S. Zashin (0064557)
Ami J. Patel (0078201)
Brittany A. Mallow (0100928)

*Attorneys for Plaintiff Minc LLC*